# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SUZANNE PITCHFORD, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 04-3171 |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

## OPINION

BYRON G. CUDMORE, U.S. Magistrate Judge:

Plaintiff Suzanne Pitchford appeals from a final decision of the Social Security Administration (SSA) denying her request for Disability Insurance Benefits (DIB) under the Social Security Act, 42 U.S.C. §§ 416(I) and 423, for the period after April 2002. Pitchford brings this appeal pursuant to 42 U.S.C. § 405(g). The parties have consented to a determination of this case by the United States Magistrate Judge, pursuant to 28 U.S.C. § 636. Order, December 10, 2004 (d/e 8). The parties have filed cross-motions for summary judgment or affirmance pursuant to Local Rule 8.1(D). Plaintiff's Motion for Summary Judgment (d/e 9); Defendant's Motion for Summary Affirmance (d/e 13). For the reasons set forth below, the Court determines

that the SSA's decision is supported by the law and the evidence.  The SSA's Motion for Summary Affirmance is therefore allowed, and Pitchford's Motion for Summary Judgment is denied.

## STATEMENT OF FACTS

A.    Medical History

Pitchford was born July 12, 1968.  She did not complete high school, but has secured a General Equivalency Diploma.  Pitchford's primary care physician is Dr. David Dunn.  In 1998, Pitchford was hospitalized with breathing problems.  Her discharge diagnosis noted "Possible exercise asthma."  Administrative Record (A.R.) at 141.  Pitchford was hospitalized again in 1999, this time for chronic constipation.  She underwent a total abdominal colectomy with rectopexy.  Id. at 145-46.  The procedure was performed without complication; however, the medical reports note that Pitchford experienced a postoperative episode of oxygen desaturation while ambulating which corrected with rest.  Id. at 145.

In the spring of 2000, Pitchford began experiencing lower abdominal distension, bloating, and discomfort.  A.R. at 152.  A CT scan of her abdomen and pelvis revealed a 12 cm pelvic mass.  In June 2000, Pitchford underwent a abdominal hysterectomy with bilateral salpingo-oophorectomy.  Id.  By

August 2000, Pitchford developed a recurrence of fluid build up in the right pelvis, which was drained in December 2000. Id. at 408. By May 2001, she was again experiencing abdominal discomfort, and she underwent surgery in August 2001 to remove an abdominal cyst. Id. at 231-40. Pitchford developed a pelvic abscess following the surgery and required intravenous feedings and waste drains. Id. at 259-60. Her condition stabilized by December 2001. Id. at 327. However, in August and September 2002, she again reported abdominal troubles. An October 2002 CT scan revealed a pelvic cyst. Id. at 708.

In addition to the abdominal concerns, Pitchford has a history of back pain and numbness in the right extremities. In June 1999, she was examined by Dr. Victoria Johnson, who opined that Pitchford's problem was metabolic or neurologic rather than muscular skeletal. A.R. at 528. On August 5, 1999, Pitchford was examined by Dr. Judith Lee-Sigler, who rendered an impression of chronic pain syndrome consistent with fibromyalgia. Id. at 507. Pitchford underwent follow-up and met with Dr. Lee-Sigler again in March 2000. Dr. Lee-Sigler's impression was as follows: "Peripheral polyneuropathy, chronic complex pain syndrome. At this point, I think that the diagnosis of fibromyalgea is a questionable one." Id. at 462. In July 2000, Pitchford was

examined at the Washington University Neuromuscular Clinic. Id. at 157. Dr. Glenn Lopate's impression was that Pitchford's symptoms were consistent with myopathy due to a glycogen stroage disorder or electrolyte abnormalities. Id. at 159.

In November 2000, Pitchford was seen in the Neurosurgical Department of the Carle Clinic at the request of her physician Dr. Dunn. Id. at 411. In February 2001, Pitchford underwent an anterior cervical discectomy and fusion with Dr. Anne Stroink. Dr. Anne reported that a steriod taper that she administered following the discectomy "largely resolved many of the problems that [Pitchford] had been previously suffering from." Id. at 294. By April 2001, Dr. Stroink reported Pitchford to be stable and "doing well from her neck standpoint." Id. at 292. Dr. Stroink noted that Pitchford might benefit from joint stabilization exercises. Id.

In April 2001, Pitchford was again seen by Dr. Lee-Sigler. A.R. at 386. Dr. Lee-Sigler noted that Dr. Robert Zeiders had examined Pitchford and had agreed with the diagnosis of fibromyalgia. Id. In a letter dated June 26, 2001, Dr. Lee-Sigler summarized her treatment of Pitchford. Id. at 371-72. Dr. Lee-Sigler noted that Pitchford met the rheumatologic criteria for fibromyalgia, and

characterized Pitchford's prognosis as poor for resolution of her symptoms. Id. at 372.

Pitchford was examined by Dr. Victoria Johnson on January 8, 2002 relating to her fibromyalgia. A.R. at 317. Dr. Johnson reported that Pitchford had tenderness at 18 out of 18 tender points consistent with fibromyalgia as well as down her cervical thoracic and lumbar spine. Id. Dr. Stroink saw Pitchford again in March 2002, at which time Pitchford complained of low back pain radiating into her hip. Id. at 291. Dr. Stroink recommended a sacroiliac (SI) joint injection. Id. Pitchford thereafter received a series of SI joint injections from Dr. Rasmis Benyamin. Pitchford also saw Dr. Joseph Alper for a neuropsychological evaluation in March 2002. Id. at 768. Dr. Alper concluded that even unskilled work such as a cashier would be difficult for Pitchford. Id. at 772. He noted that "[w]hile, [Pitchford] may be able to participate in some skills oriented forms of vocational rehabilitation, her physical limitations are likely to preclude her participation in any competitive employment." Id.

Dr. Dunn summarized Pitchford's treatment in a letter dated November 11, 2002. A.R. at 757-58. Dr. Dunn reported that Pitchford "has a diagnosis of significant fibromyalgia and chronic pain syndrome, where she has pain in

the neck, back and shoulders." Id. at 757.  Dr. Dunn stated that Pitchford's "prognosis is poor for any hope of resolution of her symptoms of chronic pain syndrome, fibromyalgia or chronic fatigue syndrome." Id.  It was his opinion that she would most likely suffer from these conditions for the remainder of her life.  He also noted that Pitchford experienced headaches and a temporomandibular joint problem, and was easy fatigued with shortness of breath. Id.  Dr. Dunn stated that it was his belief that Pitchford was not in any way malingering.  According to Dr. Dunn, Pitchford has difficulty walking even a half of a city block without resting, is unable to stand or ambulate for a very long time, and would need to shift her position at any kind of job about every five minutes. Id. at 758.  Moreover, Dr. Dunn believed that Pitchford would not be able to climb stairs at a job.  He noted that she cannot lift or carry more than five, or at most ten pounds, twist, bend, stoop, crouch, or use ladders. Id.  Dr. Dunn estimated that Pitchford would have to be absent from work a minimum of four days a month due to "pain complaints and problems." Id.

B.   Administrative Hearing

Pitchford filed her application for DIB on January 23, 2001.  Pitchford sought DIB with an alleged onset date of July 5, 1997. Her claim was denied initially and on reconsideration.   Pitchford requested an administrative

hearing, which was held December 10, 2002. The Administrative Law Judge (ALJ) heard testimony from Pitchford and from vocational expert Chris Ann Geist.

Pitchford testified that she had previously been employed by the Farmer City IGA, stocking shelves, ordering food and working as a clerk. Pitchford testified that prior to IGA, she was employed doing assembly work at Mitsubishi Motors. Pitchford stated that she had also held jobs as a dispatcher and a drug store clerk.

Pitchford stated that the problems that kept her from working were diarrhea, shortness of breath after walking a short distance, trouble sitting for a period of time, pain in her arms and shoulders, poor concentration, and memory lapses. Pitchford asserted that she had trouble doing everyday jobs. Pitchford testified that in a normal day, she took her daughter to the bus, took care of her own hygiene needs, and did the dishes once a day. Pitchford testified that she could fix light meals, do laundry and grocery shopping, and dust. Pitchford stated that she vacuumed one room to keep her muscles in shape, but that her husband did most of the vacuuming. Pitchford testified that she watched television, attended a club meeting once a month with her grandmother, and maintained a flowerbed. She also traveled with her family.

Pitchford stated that she had a driver's license and drove once or twice a week. Pitchford stated that she had trouble climbing stairs.

Dr. Geist also testified. The ALJ asked Dr. Geist to consider

> an individual who is 34 years old with a 9th grade education and a GED, past relevant work the same as Mrs. Pitchford. And I would like you to consider somebody who is limited to sedentary work with the following exceptions. . . . No jobs which would require climbing or working at unprotected heights and no jobs which would require repetitive stooping, bending or twisting to actually perform the job. How would these restrictions affect the performance of the past relevant work?

A.R. at 898. Dr. Geist testified that Pitchford's past relevant work was at the light to medium level. When asked for examples of unskilled jobs that would fit the hypothetical, Dr. Geist pointed to telemarketing, reception and information clerk, and guard doorkeeper positions. Pitchford's attorney asked Dr. Geist whether these jobs would accommodate the need to change positions every five minutes to alleviate pain and to accommodate frequent bathroom breaks. Dr. Geist stated that telemarketing positions would not meet this accommodation, but that the other positions listed would.

C.  The ALJ's Decision

The ALJ issued her decision on September 17, 2003, concluding that Pitchford was disabled, and thus entitled to benefits, for a closed period from November 1999 through April 2002. The ALJ determined that Pitchford was

not disabled within the meaning of the statute at other claimed times. In reaching her conclusion, the ALJ followed the five-step analysis set out in 20 C.F.R. § 404.1520. The analysis requires a sequential evaluation of (1) whether claimant is engaged in substantial gainful activity; (2) the severity and duration of claimant's impairment; (3) whether the impairment equals a listed impairment in Appendix 1; (4) whether the impairment prevents claimant from doing her past relevant work; and (5) whether claimant can perform other work, given her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). The claimant has the burden of presenting evidence and proving the issues on the first four steps. The SSA has the burden on the last step; the SSA must show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy. Young v. Barnhart, 362 F.3d 995, 1000 (7th Cir. 2004).

Pitchford challenges the ALJ's decision with respect to the period after April 2002; therefore, the Court will focus on the analysis as it relates to that period. The ALJ determined that Pitchford met her burden on the first two steps of the analysis, but concluded that Pitchford failed to demonstrate that her impairments were severe enough to equal an impairment listed on

Appendix 1. A.R. at 18. The ALJ then considered whether Pitchford retained the residual functional capacity to perform her past relevant work (step four) or other work existing in significant numbers in the national economy (step five). Id. at 18-23.

In assessing Pitchford's residual functional capacity, the ALJ determined that, after April 2002, Pitchford had the capacity to perform sedentary work. Specifically, the ALJ found as follows:

> As of May 1, 2002, the claimant's medical condition had significantly improved and she regained the residual functional capacity for sedentary work with no climbing or work at unprotected heights and no repetitive stooping, bending or twisting, and no crouching, crawling or kneeling; and she is limited to work which was routine and repetitive in nature.

A.R. at 20.

In assessing Pitchford's residual functional capacity, the ALJ noted, among other evidence, Dr. Dunn's November 2002, letter which

> indicated that the claimant had fibromyalgia and chronic pain syndrome. He indicated that she was unable to stand or ambulate for very long and would need to shift her position every five minutes. He said that she could not lift or carry more than 5-10 pounds, and could not twist, bend, stoop, crouch or use ladders and would be absent from work 4 times per months.

Id. at 20.

The ALJ noted that

> these limitations are not supported by specific medical evidence. This doctor does not state how his limitations are consistent with the specialists' medical findings regarding the claimant's improved condition and the doctor does not provide an evidence bridge between his specific limitations and specific medical findings. For example, the doctor does not state how he knows the claimant would miss four days of work per month, as apposed to one or six days per month. No supporting evidence is provided by this doctor such as a functional capacity evaluation which would support his conclusions. Also, the doctor does not distinguish between time periods when giving his conclusions, i.e. the claimant would logically have varying levels of limitation depending on her improvement with treatment. While the claimant may have been this limited during the closed period of disability; this doctor's opinions are not supported considering the claimant's improved medical condition after successful treatment.

Id. The ALJ recognized that Pitchford had a variety of impairments that could reasonably be expected to cause pain and limitation. Id. at 21. However, the ALJ concluded that the degree of pain and limitation alleged by Pitchford was inconsistent with the objective medical evidence and her functional ability. Id.

The ALJ determined that Pitchford could not return to her past relevant work. Therefore, the burden shifted to the SSA to show that other jobs exist in significant numbers in the national economy that Pitchford could perform, given her residual functional capacity, age, education, and work experience. The ALJ found that the SSA met this burden with respect to the period after April 2002. The ALJ noted that the vocational expert testified that given

Pitchford's residual functional capacity, even including the additional limitation of the need to change position frequently, a significant number of jobs existed in the national economy that she could perform after April 2002. Thus, the ALJ determined that Pitchford was not eligible for DIB after April 2002.

D.    The Appeals Council

Pitchford appealed the portion of the ALJ's decision that held that she was not entitled to benefits after April 2002 to the SSA Appeals Council. A.R. 10. Pitchford argued that this portion of the ALJ's decision was against the manifest weight of the evidence. Id. After considering supplemental medical reports, the Appeals Council denied Pitchford's request for review on June 11, 2004. Pitchford filed her Complaint (d/e 1) in the present case on August 6, 2004. She filed an Amended Complaint (d/e 4) on August 13, 2004.

## ANALYSIS

Pitchford contends that the ALJ failed to consider limitations on her physical activity resulting from fibromyalgia in determining her residual functional capacity. As a part of this argument, Pitchford contends that the ALJ failed to address specific limitations placed on her by treating physicians Dr. Lee-Sigler and Dr. Dunn. This Court will reverse the decision of the SSA if that decision is not supported by substantial evidence or results from an

error of law. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). This Court reviews the ALJ's factual findings to determine whether they are supported by substantial evidence. Substantial evidence is, "such relevant evidence as a reasonable mind might accept as adequate" to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the ALJ's findings if they are supported by substantial evidence and may not substitute its judgment for that of the ALJ. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). The ALJ further must at least minimally articulate his analysis of all relevant evidence. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). The Court must be able to "track" the analysis to determine whether the ALJ considered all the important evidence. Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995).

Pitchford raises several arguments in her request for reversal or remand. However, as set forth below, her arguments are unpersuasive. Pitchford contends that the ALJ failed to address the limitations identified by Dr. Lee-Sigler in June 2001 and by Dr. Dunn in November 2002. "A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record." Skarbek v. Barnhart, 390

F.3d 500, 503 (7th Cir. 2004). With respect to Dr. Lee-Sigler, the Court notes that the report in question was dated June 2001, during the period that the ALJ determined Pitchford qualified for benefits. Additionally, the ALJ on several occasions noted Dr. Lee-Sigler's diagnosis of fibromyalgia. While the June 2001 report characterized Pitchford's prognosis as poor for resolution of her symptoms, in reaching her determination, the ALJ specifically relied upon medical and functional evidence that supported a finding that Pitchford experienced some degree of relief from her symptoms by May 2002, based on successful treatment after June 2001. The ALJ did not erroneously fail to credit Dr. Lee-Sigler's June 2001 report.

Pitchford's arguments relating to Dr. Dunn's November 2002 report are equally unavailing. The ALJ specifically considered this report and found it to be inconsistent with Pitchford's improved condition following treatment. Moreover, as the ALJ correctly noted, Dr. Dunn's conclusions were not supported by specific medical findings. Furthermore, despite her decision that Dr. Dunn's report was not entitled to controlling weight, the ALJ incorporated many of the limitations set out by Dr. Dunn in her assessment of Pitchford's residual functional capacity. The ALJ characterized Pitchford's residual functional capacity as limited to sedentary work that did not require climbing,

working at unprotected heights, or repetitive stooping, bending or twisting and which allowed Pitchford to change positions frequently.  Pitchford's claim of error fails.

Pitchford argues generally that the ALJ failed to consider limitations on her physical activity resulting from fibromyalgia in determining her residual functional capacity.  As an initial matter, the Court notes that a diagnosis of fibromyalgia is not dispositive, because fibromyalgia is not always disabling. Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998).  Indeed, it usually is not. Id. Moreover, in the present case, the ALJ specifically recognized and considered Pitchford's diagnosis of fibromyalgia on several occasions.  The ALJ noted that Pitchford had responded favorably to treatment, including SI joint injections, by May 2002.  The ALJ also properly considered Pitchford's actual activities in determining that she was not disabled.  See 20 C. F. R. § 404.1529(c).  Despite her fibromyalgia, Pitchford was able to carry out a number of daily activities, drive, and travel, activities that the ALJ deemed to be similar to work functions.  The ALJ's decision that Pitchford was not disabled after April 2002 is supported by substantial evidence.

THEREFORE, the Commissioner of Social Security's Motion for Summary Affirmance (d/e 13) is ALLOWED.  The Plaintiff Suzanne Pitchford's

Motion for Summary Judgment (d/e 9) is DENIED.  The decision of the Commissioner of Social Security is AFFIRMED.  All pending motions are denied as moot.  This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:  October 6, 2005.

        FOR THE COURT:

                      s/ Byron G. Cudmore
                      _____
                      BYRON G. CUDMORE
                      UNITED STATE MAGISTRATE JUDGE